MANDATE

23-7199(L)
*United States v. Greenwood*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of January, two thousand twenty-five.

PRESENT:   JOSÉ A. CABRANES,
                     RICHARD C. WESLEY,
                     STEVEN J. MENASHI,
                              *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

           *Appellee*,

           v.                                                      No. 23-7199, 24-368

KARL SEBASTIAN GREENWOOD, MARK S. SCOTT,

           *Defendants-Appellants*,

RUJA IGNATOVA, also known as Cryptoqueen, KONSTANTIN IGNATOV, also known as Sealed Defendant 1, DAVID R. PIKE, FRANK SCHNEIDER, IRINA DILKINSKA,

           *Defendants*.*

_____

_____

* The Clerk of Court is directed to amend the caption as set forth above.

MANDATE ISSUED ON 05/14/2025

*For Defendants-Appellants*:     JUSTIN S. WEDDLE, Weddle Law PLLC, New York, NY (Julia I. Catania, Weddle Law PLLC, Howard Leader, *on the brief*).

S. CONRAD SCOTT (Arlo Devlin-Brown, Nicholas G. Miller, *on the brief*), Covington & Burling LLP, New York, NY.

*For Appellee*:     KEVIN MEAD, JULIANA MURRAY, Assistant United States Attorneys (James Ligtenberg, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeals from judgments of the United States District Court for the Southern District of New York (Ramos, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Karl Sebastian Greenwood and Mark Scott appeal from judgments entered by the United States District Court for the Southern District of New York. Greenwood and Scott were convicted for their respective roles in the OneCoin cryptocurrency scheme. Greenwood was convicted of conspiracy to commit wire fraud, wire fraud, and conspiracy to commit money laundering following his guilty plea to those charges. Scott was convicted of conspiracy to commit money laundering and conspiracy to commit bank fraud following a jury trial. The district court sentenced Greenwood to 240 months of imprisonment on each count, to run concurrently, and ordered forfeiture in the amount of $300,000,000. The district court sentenced Scott to 120 months of

imprisonment on each count, to run concurrently, followed by three years of supervised release, and ordered forfeiture in the amount of $392,940,000.

On appeal, Greenwood argues that (1) the district court erred by calculating his sentence based on both domestic and foreign losses of the OneCoin scheme, and (2) his sentence was substantively unreasonable. Scott argues that (1) the district court abused its discretion by denying his motion for a new trial based on the perjury of a government witness, (2) the district court abused its discretion by excluding certain evidence, (3) the government failed to produce sufficient evidence to prove the charge of conspiracy to commit bank fraud, and (4) the government failed to produce sufficient evidence to prove the charge of conspiracy to commit money laundering and his sentence impermissibly reflects extraterritorial conduct. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I**

"This court reviews the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Richardson*, 958 F.3d 151, 153 (2d Cir. 2020) (internal quotation marks and alteration omitted). "When the defendant has preserved a claim that the district court erred in its application of the sentencing guidelines, we review issues of law *de novo*, issues of fact under the clearly erroneous standard, and mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Id.* (internal quotation marks and alterations omitted). "We will vacate a sentence as substantively unreasonable 'only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice.'" *United States v. Ortiz*, 100 F.4th 112, 122 (2d Cir. 2024) (quoting *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015)).

**A**

Greenwood argues that the district court impermissibly increased his sentencing guidelines range by considering foreign losses in contravention of our decision in *United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991). We disagree.

The sentencing guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1 n.1(I). To identify all relevant conduct, the guidelines instruct a court to consider, in the case of "a jointly undertaken criminal activity," "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(B). For "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," relevant conduct also includes "all acts and omissions described in subdivisions (1)(A) and (1)(B)" of § 1B1.3(a) that "were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2). The referenced section requires grouping of wire-fraud and money-laundering offenses. *Id.* § 3D1.2(d).

In light of these provisions, there were at least three types of conduct relevant to the calculation of Greenwood's sentence under the guidelines: (1) "the offense of conviction," including all acts and omissions of others that were within the scope of, in furtherance of, and reasonably foreseeable to the conspiracy; (2) acts that were part of the same "common scheme or plan as the offense of conviction"; and (3) acts that were part of the "same course of conduct ... as the offense of conviction."

Even if the foreign aspects of the OneCoin scheme to which Greenwood pleaded guilty did not qualify as the "offense of conviction," those aspects qualified as "relevant conduct."

The offenses of conviction were domestic wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering—for which the specified unlawful activity was the wire fraud scheme. Neither the wire fraud statute nor the conspiracy statute applies extraterritorially. *See Bascuñán v. Elsaca*, 927 F.3d 108, 121 (2d Cir. 2019); *United States v. Hoskins*, 902 F.3d 69, 96 (2d Cir. 2018). For that reason, the "offense[s] of conviction" concern conduct involving American wires, and the losses underlying the offenses of conviction are the losses attributable to the misuse of American wires.

The sentencing guidelines, however, direct a district court also to consider "relevant conduct" that is part of the "same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2). The OneCoin conduct that occurred over foreign wires was relevant conduct because it was part of the same common scheme or plan as the domestic conduct. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n.5(B)(i). Greenwood and his co-conspirators engaged in a multi-level marketing scheme to defraud investors worldwide into purchasing a fraudulent cryptocurrency. The losses effectuated over foreign wires resulted from the same "common scheme or plan" as the losses effectuated over American wires.

Our decision in *Azeem* does not categorically exclude foreign conduct from the "relevant conduct" to be considered under the guidelines. In *Azeem*, we decided not to include foreign activity in the defendant's base offense level because—even though the activity involved the same actors and occurred close in time—the activity occurred entirely abroad and was not a crime against the United States. *See Azeem*, 946 F.2d at 16-17. Azeem was convicted for conspiring to import heroin from Pakistan into the United States. The district court enhanced his base offense level due to a separate heroin transaction from Pakistan to Egypt, even though that heroin was not intended for the United States and the only connections between the two separate transactions were that both involved the

5

same courier and occurred close in time. *Id.* at 15. Including that foreign drug crime in Azeem's base offense level would have required "distinguishing between activities that violate both domestic and foreign law and those which violate only domestic law or only foreign law." *Id.* at 16-17. In this case, by contrast, the conduct involved a unitary scheme that targeted foreign and domestic victims. A separate analysis is not necessary to conclude that the domestic and foreign aspects of the OneCoin scheme were part of a common scheme or plan. Accordingly, we see no procedural error in the decision of the district court to consider losses attributable to both aspects of the scheme.

## B

Greenwood also challenges the substantive reasonableness of his sentence. We conclude that the district court did not abuse its discretion by imposing a sentence of 240 months of imprisonment. The district court considered both the aggravating factors of Greenwood's conduct—the scale of the scheme, its targeting of vulnerable and poor victims, and Greenwood's extensive profit—and the mitigating factors that Greenwood identifies on appeal. The district court accounted for the severe conditions that Greenwood experienced following his arrest in 2018. Under these circumstances, the sentence does not "constitute a 'manifest injustice' or 'shock the conscience'" because it is not "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123, 124 (2d Cir. 2009).

## II

Scott offers four arguments on appeal. First, he argues that the district court abused its discretion by denying his motion for a new trial based on the purported perjury of Konstantin Ignatov. Second, he argues that the district court abused its discretion by excluding evidence as hearsay and quashing a subpoena of Neil Bush. Third, he argues that there was insufficient evidence to support his conviction for conspiracy to commit money laundering. Fourth, he argues that

6

there was insufficient evidence to support his conviction for conspiracy to commit bank fraud.

We review Scott's challenge to the district court's denial of his motion for a new trial and to the district court's exclusion of certain evidence for abuse of discretion. *See United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018); *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). We review Scott's challenges to the sufficiency of the evidence on the conspiracy to commit bank fraud and conspiracy to commit money laundering charges *de novo*. *See United States v. Napout*, 963 F.3d 163, 184 (2d Cir. 2020).

## A

The district court did not abuse its discretion by denying Scott's motion for a new trial based on Konstantin Ignatov's testimony regarding how he disposed of his laptop in 2019 or his testimony regarding Irina Dilkinska's presence at a meeting. There was no "reasonable likelihood" that the testimony affected the judgment of the jury. *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006). Konstantin's perjurious testimony that he threw his laptop into a garbage bin in 2019 concerned "a collateral matter" that did not implicate "the merits of the case" against Scott and his alleged participation in bank fraud and money laundering conspiracies between 2015 and 2018. *United States v. White*, 972 F.2d 16, 20, 21 (2d Cir. 1992). Konstantin's testimony that he was "pretty sure" but not "a hundred percent sure" that Dilkinska was present at the meeting with Scott and Ruja Ignatova in July of 2016 was not shown to be perjurious but, even if it had been, that showing would have "merely furnishe[d] an additional basis on which to impeach a witness whose credibility ha[d] already been shown to be questionable.'" *United States v. Jones*, 965 F.3d 149, 164 (2d Cir. 2020) (quoting *United States v. Parkes*, 497 F.3d 220, 233 (2d Cir. 2007)). As the district court observed, Scott's "extensive impeachment" of Konstantin "on much more significant topics more relevant to the jury's determination of Scott's guilt" meant that evidence undermining Konstantin's testimony about the meeting "would, at

7

most, have been cumulative impeachment material." *United States v. Scott*, No. 17-CR-630, 2023 WL 6064329, at \*4, \*15, \*17 (S.D.N.Y. Sept. 14, 2023).

The district court also did not commit a reversible error by excluding the emails regarding Konstantin's perjury or by declining to hold an evidentiary hearing on the perjured testimony. The government acknowledges that the exclusion of Defense Exhibit 550 was erroneous because the email was admissible under Federal Rule of Evidence 803(3) as a statement of intent. *See United States v. Persico*, 645 F.3d 85, 100 (2d Cir. 2011). Yet that error was harmless. "Konstantin disclaimed any knowledge of the substance" of what was discussed at the meeting, so the jury could not have relied on his testimony about the meeting in reaching a verdict. *Scott*, 2023 WL 6064329, at \*17. The district court did not abuse its discretion by excluding Defense Exhibit 552 because it was not a statement of future intent and was properly excluded as hearsay. And the district court was not required to conduct a perjury hearing because "the additional evidence of perjury is not sufficiently material to undermine confidence in the verdict," which obviates the "need to probe the extent of the Government's awareness of the perjury." *Stewart*, 433 F.3d at 302.

**B**

The district court did not abuse its discretion by excluding certain emails as hearsay or by quashing the subpoena of Neil Bush. "We review a trial court's evidentiary rulings deferentially," *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir. 2007), and we will disturb a district court's ruling only when the error "had a 'substantial and injurious effect or influence' on the jury's verdict," *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003)).

The emails that Scott sought to introduce qualified as hearsay. Scott told the district court that the emails proved that a partner at his law firm advised Ruja Ignatova without knowing that OneCoin was a fraud. Contrary to Scott's argument, these emails were not evidence of Scott's "then-existing state of mind"

8

under Federal Rule of Evidence 803(3) but of the partner's purported understanding of OneCoin's business practices. To the extent the partner's understanding bore on Scott's state of mind, the proper way to admit such evidence was to call the partner as a witness. Nor did the district court abuse its discretion by quashing the subpoena of Neil Bush. As the district court noted, evidence of Bush's involvement in the CryptoReal transaction was already presented to the jury. Bush's testimony could not have provided any evidence of Scott's understanding of the legitimacy of the CryptoReal transaction because Bush and Scott never met.

## C

Scott contends that the evidence was insufficient to support his conviction for conspiracy to commit money laundering. In reviewing his challenge, "we must sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022) (quoting *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.").

The government sufficiently proved the centrality of domestic use of wires to the money-laundering schemes. The jury saw evidence that OneCoin targeted investors in the United States—including emails between Ruja Ignatova and Scott regarding how to structure OneCoin's American business—and heard the testimony of two American victims concerning the wire transfers they made from their American bank accounts, the promoters in the United States who introduced them to OneCoin, and their losses from their investments in OneCoin.

Scott argues that (1) the losses suffered by American victims were too trivial compared to the overall losses to establish a domestic nexus, and (2) the

government did not offer proof that the money from American victims "eventually made its way into the Funds." Scott Br. 45. First, that only a portion of the overall losses were suffered by American victims does not render the scheme extraterritorial. As the district court correctly noted, there is no requirement that a court "parse the percentage of fraudulent proceeds obtained in the United States, as compared to abroad." *Scott*, 2023 WL 6064329, at *12. Second, the government was not required to prove that the specific money obtained from American victims was eventually transferred into the funds, *see United States v. Zvi*, 168 F.3d 49, 56 (2d Cir. 1999), but it nevertheless provided such proof. The government's evidence showed that one of the American victims wired money for a OneCoin package from her bank account in New York to a OneCoin depository account based in the United States, which then transferred her money to the Fenero Funds. Such evidence of OneCoin's use of American wires to effect transactions "in furtherance of" the global scheme was sufficient to establish a domestic violation of the wire fraud statute. *Bascuñán*, 927 F.3d at 122.

The district court did not err by declining to provide the jury with Scott's supplemental instruction. We will not overturn a conviction for refusal to give a requested jury instruction "unless that requested instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Holland*, 381 F.3d 80, 84 (2d Cir. 2004) (alteration omitted) (quoting *United States v. Han*, 230 F.3d 560, 565 (2d Cir. 2000)). The district court properly instructed the jury on the jurisdictional element of a wire fraud offense. Scott's supplemental instruction was legally incorrect because the government was not required to trace the funds being laundered to the "proceeds" of a domestic wire fraud. *Cf. Zvi*, 168 F.3d at 56 (rejecting a "narrow definition of 'proceeds'" of the specified unlawful activity under 18 U.S.C. § 1956(a)(1)(B)(i), (a)(2)(B)(i)). Nor would it have been correct for the district court to instruct the jury that the fraud must have "occurred" in the United States. Regardless, the government offered evidence that

10

an American victim wired money to a OneCoin depository account based in the United States, which then transferred her money to the Fenero Funds.

## D

There was sufficient evidence to support Scott's conviction for conspiracy to commit bank fraud. The evidence of the CryptoReal transaction, for example, allowed the jury to find that Scott conspired to commit bank fraud. That evidence included Konstantin Ignatov's testimony that OneCoin needed to use fake names when opening bank accounts because banks froze funds associated with OneCoin periodically; the testimony of leaders of financial institutions that, after learning that the Fenero Funds were connected to OneCoin, they held emergency meetings, informed regulators, and stopped doing business with entities affiliated with the Fenero Funds; the testimony of two American victims that OneCoin instructed them to "not include words like OneCoin investment, digital currency or cryptocurrency" when directing wire transfers and that, if asked about the purpose of the wire transfers, to "simply state educational training package," Scott App'x 68; emails in which Scott acknowledged that banks were unwilling to transfer funds derived from OneCoin because that "[m]ay raise serious AML anti-money laundering issues," *id.* at 497; evidence that Scott disguised a transfer of OneCoin proceeds to Ruja Ignatova as a loan;[1] and evidence that Scott knew that proceeds of OneCoin would be transferred through an American dollar correspondent bank.

Although the evidence concerning the CryptoReal transaction was alone sufficient for a rational jury to find Scott guilty of conspiracy to commit bank fraud, the government also presented evidence in connection with the Armenta transactions. *See Scott*, 2023 WL 6064329, at *8-10. Scott argues that Armenta's statements to his banks do not show that Scott conspired with Armenta to commit

---

[1] Scott argues that the government never proved that his statement that the transaction was a "loan" was false. Scott Br. 53. The jury could infer, however, that if Scott were referring to a real loan, the loaned money would not have been considered available cash.

bank fraud, but the government also presented evidence that (1) Scott knew the Fenero Funds were not legitimate investment funds, (2) banks were refusing to process funds associated with OneCoin, and (3) the origin of the funds in Armenta's account was OneCoin. A rational jury could conclude that Scott knew that Armenta would be able to transfer the OneCoin funds only if Armenta lied to his banks.

**E**

We further conclude that the venue was proper. The jury was presented with evidence that Scott was aware that both the CryptoReal and Armenta transactions used correspondent accounts based in New York. "[A]lthough the district court did not specifically instruct the jury as to the foreseeability of venue in the Southern District of New York, the evidence supporting that conclusion is so compelling that, if there was an error in that omission, it was plainly harmless." *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007).

\* \* \*

We have considered Greenwood's and Scott's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit